UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MICHAEL LEROY CAMPBELL, | ) | Civil Action No.: 4:07-cv-4012-HFF-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| LARRY POWERS, Director, LT. | ) | |
| WILLIAM CHURCH, and OFFICER | ) | |
| KUNNAK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, is an inmate in the custody of the South Carolina Department of Corrections (SCDC) and, at time of the incident set forth in his Complaint, was housed at the Spartanburg County Detention Facility (SCDF). Although it is not explicitly set forth in his Complaint, Plaintiff is presumably asserting a claim pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Presently before the Court is Defendants' Motion for Summary Judgment (Document # 28). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these motions are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II.    FACTS

Plaintiff asserts in his verified complaint that on September 22, 2007, Defendant Officer Kunnak did not let the inmates out for their evening rotation. Around 9:30 p.m., someone's cell flooded with water from the toilet. Officer Kunnak reported that the inmates were rioting. Later that

evening, all the inmates were taken from their cells by the SWAT team of Spartanburg County. They were handcuffed and taken to the main holding cell. Plaintiff alleges that excessive force was used to take the inmates from their cells.

Plaintiff complains that during the lockdown following the rioting incident on September 22, 2007, inmates had no running water in the cells, the toilets were not flushable, they had no bed linens, shoes, hygiene items, outgoing mail, visitation, phone calls or any other contact with anyone on the outside. Certain inmates were fed sandwiches and water for each meal, three times a day, for three days, while the rest of the pod had regular meals.

Plaintiff alleges that Officer Kunnak was either put on administrative leave or he quit on September 24, 2007. On September 30, 2007, they were given hygiene items only to have them taken away a short time later. Plaintiff also alleges that at no time during the alleged rioting incident did Lt. Church come to the pod to evaluate the situation. He further alleges, that as of the time his complaint was filed, December 17, 2007, he was still on 24 hour lockdown.

Defendants Larry Powers and Lt. Church provide affidavits in support of their Motion for Summary Judgment. Powers avers that on September 22, 2007, the inmates in Pod 3 were told to return to their cells for a rebriefing in the rules of the SCDF concerning noise control and behavior. Powers Aff. at ¶ 5. While Officer Kunnak was checking the cell doors, the inmates began to kick the doors, curse at the officer and demand that they be released. Id. Officer Kunnak told them that he would allow them back out after they followed his request to quiet down. Id. Officer Kunnak noticed Plaintiff as one of the inmates instigating the disturbance. Id. Officer Kunnak heard inmate Travis Austin advise the other inmates to start flooding their cells. Id. The other inmates yelled obscenities at Officer Kunnak and made physical threats towards him. Id. Officer Kunnak contacted

-2-

Lt. Church and advised him of the unrest in Pod 3. Id. He requested additional officers for assistance in locating and removing the inmates causing the disturbance. Id. Lt. Church advised Officer Kunnak to leave the pod locked down until order could be restored. Id.

The inmates continued to act in a riotous manner despite numerous warnings and orders to quiet down. Id. at ¶ 6. Officer Kunnak again called Lt. Church. Id. Approximately twenty inmates in multiple cells flooded their toilets and sinks and kicked their doors. Id. Lt. Church arranged for the water to be cut off from the pod to prevent further flooding. Id. While turning off the water, he heard inmates declaring they were going to pop their locks and assault Officer Kunnak. Id. The inmates continued to verbally assault and physically threaten Officer Kunnak and beat on their cell doors. Id. Powers organized a Response team to help Officer Kunnak regain control and remove inmates from Pod 3. Id. The riotous acts continued for several hours until the Response Team arrived and began removing inmates from the pod one cell at a time. Id. Inmates identified as not participating in the riot were escorted to the recreation yard or another housing unit. Id. Those involved in the rioting were removed to holding cells in booking. Id.

Inmates involved in the riot were briefed on expected behavior. Id. at ¶ 7. They were served bread, bologna and water at each meal for three days to maintain order by not providing those inmates with any materials, such as utensils, that could be used to harm staff or other inmates. Id.

The SCDF had in place a Security and Control Policy to follow in emergency situations such as a riot. Id. at ¶ 8 and Ex. C to Powers Aff. Powers also followed South Carolina Jail Standard #1013 to temporarily suspend standards based on the emergency situation during the riot. Id. and Ex. D to Powers Aff. Showers and changes of clothing were discontinued until order and water was returned to the pod. Id. at ¶ 9. Officers turned on the water intermittently so that toilets could be

flushed. Id. Inmates were not allowed use of the telephone nor were they allowed to send personal mail during that period. Id. They were allowed to view mail for an hour before it was placed in their property bins. Id. They were also not allowed to use certain hygiene items such as bars of soap from September 23, 2007 to October 1, 2007 because they could have been used as weapons or to stop up the toilets in the cells. Id.

During the lockdown period, the pod was monitored and evaluated daily. Id. at ¶ 10. During the lockdown period, inmates were still allowed to avail themselves of the grievance process. Id. Plaintiff did not submit any grievances during lockdown. Id. All cells were reopened by October 4, 2007. Id. at ¶ 11. Thirty-one inmates, including Plaintiff, were charged with inciting prisoners to riot under S.C. Code Ann. § 24-13-430(1). Id. and Ex. E to Powers Aff.

Officer Kunnak's separation from employment was not the result of disciplinary action taken as a result of the rioting incident. Id. at ¶ 12. He followed SCDF policies and procedures in his attempts to maintain order in Pod 3. Id. Powers avers that all actions taken during and following the rioting incident were essential to maintain good order and discipline following the riot and were not a form of punishment. Id. at ¶ 13. See also Church Aff.

## III.    STANDARD OF REVIEW

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services,

901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## IV.     DISCUSSION

### A.     Legal Analysis Applicable to Pretrial Detainees

The SCDF is a pre-trial detainment facility.  Powers Aff. at ¶ 3.  Plaintiff was detained at the facility to await the disposition of pending charges.  Id.  Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d

941 (4th Cir.1987). The rationale for this distinction was explained in <u>Ingraham v. Wright</u>, 430 U.S.

651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions ... the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be

punished so long as the punishment is not "cruel and unusual." <u>Bell v. Wolfish</u>, 441 U.S. 520, 99

S.Ct. 1861, 60 L.Ed.2d 447 (1979). Using the standard set out in that case, a condition must be

evaluated on whether or not it was implemented to "punish" the detainee before he was convicted

of any crime. Balanced against that concern, however, is the legitimate security concerns of housing

a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive

purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of

a facility, it will be upheld. <u>Bell</u>, 441 U.S. at 538.

B.    Conditions of Confinement

Confinement conditions of pretrial detainees are to be evaluated under the due process clause

rather than the Eighth Amendment prohibition against cruel and unusual punishment. <u>Bell</u>, 441 U.S

.at 535 n. 16. To prevail on a conditions of confinement claim, a pretrial detainee must show either

(1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive

governmental objective, from which a punitive intent may be inferred. <u>Hill v. Nicodemus</u>, 979 F.2d

987, 991 (4th Cir.1992) (citing <u>Martin v. Gentile</u>, 849 F.2d 863, 870 (4th Cir.1988)). Prison officials

act with the requisite culpable intent when they act with deliberate indifference to the inmates'

suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir.1985), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

Plaintiff complains of the conditions of his confinement following the rioting incident of September 22, 2007.  However, Powers avers that the SCDF had in place a Security and Control Policy to follow in emergency situations such as a riot and that he followed South Carolina Jail Standard #1013 to temporarily suspend standards based on the emergency situation during the riot. "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547.

Plaintiff has failed to produce evidence of an express intent to punish or lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. In light of the unrest in Pod 3, including the verbal assaults and physical threats made by inmates, including Plaintiff, against Officer Kunnak, the decision to prevent the inmates from access to any materials that may have been used as weapons, such a meal utensils and hygiene products, was reasonably related to the attempt to restore order after a riot. In addition, in light of the use of the toilets to flood the cells in an effort to incite other inmates to riot, the discontinuation of water for a period of time was also reasonably related to the attempt to restore order. The other efforts to maintain order, such as preventing inmates from using the telephone or sending outside mail for a short period of time, were reasonable as well.

Plaintiff also fails to provide any evidence of serious or significant physical or emotional injury resulting from challenged conditions.[1] Thus, his conditions of confinement claim cannot withstand summary judgment.

C.      Excessive Force

Plaintiff also claims that excessive force was used when the Response Team was removing the inmates from their cells. However, Plaintiff does not identify the excessive force used or the injuries he sustained as a result of the excessive force.

---

[1]Plaintiff asserts in his response to the Motion for Summary Judgment that on September 27, 2007, he was given some medicine by an Officer Snipes that made him feel funny. On September 30, he was taken to the hospital and his blood sugar levels were low. He states that a nurse told him the medicine he was given could have put him in a coma. He attaches medical records from his hospital visit. Plaintiff did not assert a medical indifference claim in his Complaint or any facts that would give rise to such a claim. Furthermore, the new allegations set forth in Plaintiff's Response do not implicate any of the Defendants named in this action. Thus, these claims are not properly before the court and will not be addressed.

The objective element of an excessive force claim requires more than a de minimis use of force. The Supreme Court has proscribed recovery based on de minimis force, unless that use of force is "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal quotation marks omitted). De minimis injury is evidence of de minimis force. Norman v. Taylor, 25 F.3d 1259, 1262-63 (4th Cir.1994). The Fourth Circuit Court of Appeals, en banc, has recognized a bright-line rule in the Supreme Court's jurisprudence that a de minimis injury will defeat a plaintiff's excessive force claim "absent the most extraordinary circumstances," i.e., unless the force used was "repugnant to the conscience of mankind." Norman, 25 F.3d at 1263.

In the absence of any specific allegations of the amount of force used or the type of injuries sustained, Plaintiff's claim for excessive force cannot withstand summary judgment.

D.     Qualified Immunity

Defendants also contend that to the extent plaintiff seeks to proceed against Defendants in their individual capacities, they entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Defendants argue that the acts complained of by plaintiff are discretionary acts which are protected by the doctrine of qualified immunity as each defendant was acting in his/her capacity as an official of the State of South Carolina at all times relevant to this suit.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute

immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow</u>, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir.1994) (internal citations omitted), cert. denied, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

-10-

## V.     CONCLUSION

For the reasons set forth above, it is recommended that Defendants' Motion for Summary

Judgment (Document # 28) be granted and this case dismissed in its entirety.[2]

                                              s/Thomas E. Rogers, III
                                              Thomas E. Rogers, III
                                              United States Magistrate Judge

January 28, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the following page.**

---

[2]Also pending are Plaintiff's two Motions for Appointment of Counsel (Documents # 41, 42).  Plaintiff asserts that he is unable to read or write and has to depend on other inmates to do his legal work.  Plaintiff has identified no exceptional circumstances that would warrant appointment of counsel, see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975), as he has failed to show how his reliance on others has hindered his ability to prosecute this case.  Furthermore, the undersigned has previously ruled on this issue.  See Order (Document # 39).  These Motions for Appointment of Counsel (Documents # 41, 42) are **DENIED**.